UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
IN RE: SONY CORP. SXRD REAR PROJECTION
TELEVISION MARKETING, SALES PRACTICES
AND PRODUCTS LIABILITY LITIGATION

                                                            09-MD-2102 (RPP)
                                                            **ORDER AND OPINION**

-----------------------------------------------------------X


**ROBERT P. PATTERSON, JR., U.S.D.J.**

**I. Preliminary Certification of Class, for Purposes of Settlement Only**

   The Court hereby certifies, for the sole purpose of considering the Class Action

Settlement Agreement ("Settlement" or "Agreement), executed by counsel for the

Defendants and class counsel on May 18, 2010, and filed herewith, a settlement class of

"all end-user consumers in the United States who purchased or received as gifts Sony

SXRD high definition rear projection television models KDS-R60XBR2, KDS-

R70XBR2, KDS-50A2000/2020/3000, KDS-55A2000/2020/3000, KDS-

60A2000/2020/3000, and KDS-70Q006."  The Settlement Agreement contains a

provision making the owners of KDS-70Q006 televisions severable from the remainder

of the settlement class.[1]

   Although the Court has not held a hearing to determine if the terms of the

proposed settlement are fair and reasonable to members of the class, the Court finds that

this settlement class meets all requirements of Federal Rule of Civil Procedure 23 for

---

[1] At argument before the Court, counsel for the *Meserole* Plaintiffs indicated that they would challenge, at
the fairness hearing, the inclusion of these owners of KDS-70Q006 televisions on commonality grounds.
Transcript of May 6, 2010 Hearing ("May 6 Tr.") at 188.  Counsel for Sony suggested making these class
members severable so that a commonality challenge, if successful, would not jeopardize the entire
settlement. *Id*. at 194.  Counsel for Plaintiff Cardenas consented. *Id*.  Counsel for the *Meserole* Plaintiffs
indicated that they did not intend to object to the severability provision. *Id*. at 199.  The Court also
approved of the severability provision. *Id*. at 201.

preliminary certification.  First, counsel have represented that the class likely contains

roughly 350,000 individuals.  Letter from McKenzie Anderson (May 17, 2010).

Accordingly, the Court finds that "the class is so numerous that joinder of all members is

impracticable."  F.R.C.P. 23(a)(1).  Second, no party has pointed to any evidence that the

factual issues among the separate models vary dramatically; they all involve high

definition rear projection television sets, an unknown proportion of which have optical

blocks that have malfunctioned producing a characteristic "yellow stains, green haze, and

other color anomalies" on the television screens.  Settlement Agreement ¶ 1.3.  Nor has

any party suggested that the legal issues confronting the owners of varying models will

vary with any significance.  Counsel for the *Meserole* plaintiffs have indicated that they

intend to challenge the factual commonality, with respect to the owners of KDS-70Q006

televisions.  The Court finds that "there are questions of law or fact common to the

class," F.R.C.P. 23(a)(2), and notes that the *Meserole* plaintiffs had previously agreed to

include the KDS-70Q006 television owners in a proposed settlement agreement with

Sony.  Ex. A to Purcell Decl. (Mar. 9, 2010), at 7.   Third, the claims of named plaintiff

Sabrina Cardenas are similar factually and legally to those of the entire settlement class.

The defects in the optical blocks, as alleged, all pertain to optical blocks which

malfunction to produce yellow stains, green haze and other color anomalies on the

television screens, and the legal claims relate to Sony's limited warranty and violations of

various consumer protection statutes.  Therefore, the Court concludes that "the claims or

defenses of the representative parties are typical of the claims or defenses of the class."

F.R.C.P. 23(a)(3).  Fourth, the Court finds that the representative party, Sabrina

Cardenas, sharing the same legal and factual situation as the class members, "will fairly and adequately protect the interests of the class."  F.R.C.P. 23(a)(4).

This case has generated a substantial amount of controversy – seven purported class actions have been brought in federal courts, five in the Southern District of New York, one in the Eastern District of New York, and one in the Eastern District of Texas, and have been consolidated herein by order of the Judicial Panel on Multidistrict Litigation.  With a class as large as 350,000 consumers, and with many of these consumers presenting similar, if not identical complaints, the Court concludes that, in this matter, "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  F.R.C.P. 23(b)(3).

The Court therefore preliminarily certifies the above defined class, without prejudice to future challenges to the commonality of the class and the possible exclusion of persons who purchased television model KDS-70Q006, as reserved by counsel for the *Meserole* plaintiffs at the conference held on May 6, 2010.


**II. Preliminary Approval of Class Settlement**

The Second Circuit has stated that preliminary approval of a settlement "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980) (citing MANUAL FOR COMPLEX LITIGATION § 1.46 at 55 n.10 (1977)).  At this stage, the Court must only "make a preliminary

determination on the fairness, reasonableness, and adequacy of the settlement terms." MANUAL FOR COMPLEX LITIGATION § 21.632 at 321 (4th ed. 2004).

The Settlement provides for the following benefits to class members: (1) the extension of warranty terms,[2] Settlement Agreement ¶ 4.2; (2) the establishment of "a dedicated team of technical representatives" to diagnose problems and arrange for repairs of malfunctioning optical blocks for all class members, *Id.* ¶ 4.3.2; (3) payments of cash to class members in the event that shipment of a replacement optical block is delayed for longer than fourteen days or in the event that class members should require more than one optical block repair during the warranty or warranty extension, *Id.* ¶ 4.3.3;[3] (4) reimbursement of out-of-pocket expenses incurred for the repair of any optical block prior to the termination date of the warranty, as extended, for each model, *Id.* ¶ 4.4; (5) a full refund of the payments for extended service plans purchased for those class members who choose to cancel their extended service plans, *Id.* ¶ 4.5; and (6) reimbursement, for class members who, prior to the effective date of the Settlement, had multiple optical block repairs and paid money to Sony for an upgrade to a different XBR2, A2000, A2020, or A3000 SXRD television. *Id.* ¶ 4.6. Additionally, Sony has agreed to bear all costs of settlement administration. *Id.* ¶ 4.7. In exchange, the class members who do not opt out of the class will release the Defendants from liability relating in any way to picture quality and optical blocks in the televisions or color anomalies in the picture

---

[2] The warranties have been extended twice previously by Sony. The warranty extensions in the Settlement generally add only a few months time to the already extended warranties.

[3] The cash payments are as follows: (1) $200 for owners of the KDS-50A2000, KDS-50A2020, and KDS-50A3000 televisions; (2) $250 for owners of the KDS-55A2000, KDS-55A2020, and KDS-55A3000 televisions; (3) $300 for owners of the KDS-60A2000, KDS-60A2020, and KDS-60A3000 televisions; (4) $350 for owners of the KDS-R60XBR2 televisions; (5) $400 for owners of the KDS-R70XBR2 televisions; (6) and $700 for owners of the KDS-70Q006 televisions.

display, such as green blobs, yellow stains, yellow haze, yellow lines, a softer and washed out picture, lack of color uniformity, poorer rendition of dark colors, "blotchy" rendition of the color black, problems with gray scale and convergence problems, in televisions covered by the purported class action. *Id.* ¶ 5.1. The agreement provides that the Defendants will pay class counsel $625,000, or whatever lower amount is awarded by the Court. *Id.* ¶ 6.1.

While the counsel for the *Meserole* plaintiffs have made many insinuations and statements about the inadequacy or inappropriateness of counsel for plaintiff Cardenas, they have pointed to no evidence or documentation showing that the negotiations between the Defendants and counsel for plaintiff Cardenas were collusive. Indeed, at the hearing held on April 23, 2010, counsel for plaintiff Cardenas represented: (1) that his law firm became involved in this case when approached by Ms. Cardenas and her lawyer, Cornelius Dukelow of the Abington Intellectual Property Law Group, Transcript of Apr. 23, 2010 hearing ("Apr. 23 Tr."), at 10; (2) that the law firm had no contact with Sony before beginning settlement negotiations with counsel for Sony in "September or October" of 2009, *Id.* at 11; (3) that after consulting with plaintiff Cardenas and Mr. Dukelow, the firm began settlement negotiations with counsel for Sony, *Id.* at 12; (4) that the firm consulted with Dr. Sohail Dianat, a professor at the Rochester Institute of Technology who is an electrical engineer, specializing in monitors and televisions, *Id.*; Letter from William Federman to the Court (May 10, 2010); (5) that the firm consulted with William Rubenstein, a professor of consumer law at Harvard Law School, Apr. 23 Tr. at 13; Letter from William Federman to the Court (May 10, 2010); (6) that negotiations lasted six months, and that there was extensive "back and forth" over the

terms of the settlement, Apr. 23 Tr. at 15; and (7) that the firm engaged in extensive

confirmatory discovery, including seven transcribed interviews, two depositions, and

19,000 pages of documents reviewed, Defendants' Mem. of Law, at 19.  On the record

before the Court, there is no evidence or documentation that contradicts this account of

the negotiations.  The Court therefore finds, as a preliminary matter, that the negotiations

were not collusive and were conducted at arms length.

As to whether the Settlement, as written, is fair, reasonable, and adequate, counsel

for the *Meserole* plaintiffs have raised many objections.  Many of these objections are

more properly raised at a fairness hearing, given the limited nature of a court's review

during preliminary approval.  The warranty extensions should result in many of the

original warranties of the optical blocks of two years having been doubled in length.  *See*

Notice of Settlement, 3-4.  The cash payments are not insignificant, and they provide

some assurance that these customers who have problems with multiple optical blocks

malfunctioning will not be with no recourse.  Additionally, the Settlement will refund any

payments made for repairs prior to the termination date of the extended warranty and will

refund, upon request, the purchase price of the extended purchase plans.  This refund is

important to consumers because Sony's extensions of the limited warranty extended the

length of the warranty past the length of many of the extended service plans purchased by

consumers.  These benefits appear to address many of the concerns of consumers and are

not insubstantial.  The Court also notes that, because no party has introduced evidence as

to the depreciated value of high definition televisions after the period of their limited

warranty, it is impossible on this record to compare the refunds offered to the depreciated

value of each model of television affected.  Many of the class members' televisions are

three to four years old.  Moreover, no party has introduced evidence showing the percentage of optical blocks that fail over a fixed period of time for the various models that make up this class.  These, however, are issues that are properly raised at the fairness hearing, rather than at this preliminary stage.

Therefore, the Court concludes that preliminary approval of the Settlement is appropriate.

### III. Appointment of Class Counsel

The law firm of Federman & Sherwood has moved to be named class counsel.

While counsel for plaintiff Cardenas appears to have copied sections of the complaint filed in *Meserole, et al.*, this is also the case with every other operative complaint in this matter.  Since that time, counsel for plaintiff Cardenas has engaged in significant confirmatory discovery, including the review of nearly 19,000 pages of documents produced by Sony in prior litigation and in the current litigation, and the depositions and interviews of nine current and former Sony employees, including the *Meserole* plaintiffs' two confidential witnesses, at which counsel for Sony, plaintiff Cardenas, and the *Meserole* plaintiffs were present.  Apr. 23 Tr. at 24; Letter from William Federman (Dec. 30, 2009); Ex. B, C, D, E, F, & G to Purcell Decl. (Mar. 9, 2010). Counsel for plaintiff Cardenas also worked extensively with consultants at Rochester Institute of Technology and Harvard University who were experts in electrical engineering and consumer law, respectively.  Apr. 23 Tr. at 12-14; Letter from William Federman (May 10, 2010).  Therefore, pursuant to Rule 23(g)(1)(A)(i), of the Federal

Rules of Civil Procedure, the Court finds that "the work counsel has done in identifying or investigating potential claims in the action" has been extensive and thorough.

In connection with its motion to be named class counsel, the law firm of Federman & Sherwood has submitted a resume listing the experience of the firm's individual lawyers and a list of "select cases where Federman & Sherwood have served or are serving as lead or co-lead counsel." *See* "Firm Resume," attached to plaintiff Cardenas' Memorandum for Preliminary Approval of Class Action Settlement ("Cardenas Mem. Prelim. App."); *see also* Letter from William Federman to the Court (May 11, 2010) (indicating additional cases, in the Southern District of New York, in which Federman & Sherwood has served as lead or co-lead counsel). The nine lawyers of Federman & Sherwood have substantial experience in a variety of trial courts and civil practice settings. *Id.* The list of select cases shows that the firm has extensive experience in derivative shareholders suits and securities lawsuits. *Id.* While its experience with consumer law cases such as this is limited, the Court concludes that the law firm's experience with securities and derivative lawsuits and in examining witnesses in this litigation is sufficient to show that the law firm is capable of managing complex litigation, and negotiating and protecting class members' rights during a settlement. Therefore, the Court finds that "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action" is sufficient. F.R.C.P. 23(g)(1)(A)(ii).

In briefings to, and appearances before, this Court, the lawyers representing plaintiff Cardenas have demonstrated their awareness of and familiarity with the consumer protection laws and warranty laws that govern this action. *See, e.g.*, Cardenas

Mem. Prelim. App.; Apr. 23 Tr. 6-18.  Furthermore, they have employed experts in both

areas to assist them.  Therefore, pursuant to Federal Rule of Civil Procedure

23(g)(1)(A)(iii), the Court concludes that "counsel's knowledge of the applicable law" is

sufficient.

Counsel for plaintiff Cardenas is a law firm that is experienced with handling

large class actions.  *See* "Firm Resume"; Letter from William Federman to the Court

(May 11, 2010).  The work performed by the firm of Federman & Sherwood as lead

counsel in prior cases has garnered praise from supervising courts.  *See* Letter from

William Federman to the Court (May 11, 2010).  Other courts have noted "a high level of

skill in litigating" a class action and have commended the firm for its work in negotiating

and implementing settlements.  *Id*.  The Court therefore concludes that, having such

experience, counsel will be knowledgeable about the resources necessary to bring a class

action of this magnitude, and that counsel will commit all necessary resources to

representing this class.  F.R.C.P. 23(g)(1)(A)(iv).

The final consideration that the Court must weigh prior to appointing class

counsel is whether counsel will "fairly and adequately represent the interests of the

class."  F.R.C.P. 23(g)(4).  Counsel for the *Meserole* plaintiffs has argued, orally and in

writing, that counsel for plaintiff Cardenas is unable and unwilling to fully represent the

interests of the putative class.  However, no party has pointed to any actual or apparent

inability or conflict that would prevent the law firm of Federman & Sherwood from

zealously representing the interests of all class members.  The Court concludes that the

law firm of Federman & Sherwood will "fairly and adequately represent the interests of

the class."  F.R.C.P. 23(g)(4).

Therefore, the Court designates the law firm of Federman & Sherwood as class counsel.

**IV. Approval of Notice**

On April 23, 2010, May 3, 2010, and May 6, 2010, the Court heard extensive arguments on the issue of the notice and summary notice to be provided to class members informing them of the preliminary approval of the settlement, the nature and content of the settlement, their rights as class members, procedures for objecting to or excluding themselves from the settlement, and the contact information of both sets of Plaintiffs' counsel.  *See* MANUAL FOR COMPLEX LITIGATION § 21.312 at 295 (4th ed. 2004).

Therefore, the Court concludes that the notice and summary notice, as filed herewith, provide clear and reasonable instructions to class members and adequately inform them of their rights under the proposed settlement. The notice and summary notice are approved.

Not later than thirty days after the date of this Order, the Defendants shall cause: (1) a copy of the notice to be sent by direct mail or email to all members of the settlement class for whom Sony has obtained contact information, and (2) a copy of the notice to be published on two occasions, separated by one week, in *USA Today* and/or *The Wall Street Journal*.  Sony shall also, as soon as is practicable, cause the notice and all relevant forms to be posted on the website that it has established for this purpose, http://www.sony.com/sxrd2settlement.

**V. Stay of Proceedings**

So that the parties may proceed in the most efficient and expeditious matter, all related matters in this multi-district litigation, namely the cases *Meserole et al. v. Sony Corporation of America, et al., Ouellette, et al. v. Sony Corporation of America, et al., Webber, et al. v. Sony Corporation of America, et al., Raymo, et al. v. Sony Corporation of America, et al., Cruisinberry, et al. v. Sony Corporation of America, et al.,* and *Minton v. Sony Corporation of America, et al.,* are hereby stayed pending the issuance of a decision by the Court granting or denying final approval of the proposed settlement.

**VI. Scheduled Hearing**

A fairness hearing is scheduled for August 13, 2010 at 9:30 a.m. in Courtroom 24A of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York, 10007.

All written submissions to the Court in connection with this hearing shall be made before August 3, 2010.

IT IS SO ORDERED.

Dated: New York, New York
       May 19, 2010

                                                Robert P. Patterson, Jr.

                                                U.S.D.J.

11

**Copies of this order were faxed to:**

Leigh Smith, Jennifer S. Czeisler, Sanford P. Dumain: **212-868-1229**
Milberg LLP
One Pennsylvania Plaza
New York, NY 10119

Jeffrey Alan Koncius, Joseph Jude Morgan Lange: **310-414-1882**
Lange & Koncius, LLP
222 No. Sepulveda Blvd., Suite 1560
El Segundo, CA 90245

Robert Ian Lax: **212- 818-1266**
Robert I. Lax & Associates
380 Lexington Avenue
31st Floor
New York, NY 10168

Richard Irving Werder, Jr., Katie McKenzie Anderson: **212-849-7100**
Quinn Emanuel Urquhart Oliver & Hedges LLP
51 Madison Avenue
New York, NY 10010

John Purcell: **213 -443-3100**
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 16th Floor
Los Angeles, CA 90017

William Bernard Federman , Jennifer Faith Sherrill: **(405) 239-2112**
Federman & Sherwood
10205 North Pennsylvania Ave.
Oklahoma City, OK 73102

Kim Eleazer Richman: **(212) 687-8292**
875 Sixth Avenue, Suite 1808
New York , NY 10001

Michael Robert Reese: **(212) 253-4272**
Reese Richman LLP
230 Park Avenue
10th Floor
New York , NY 10169

12